JOHN E. BEAL *vs.* EDWARD BRYANT, and another.

Knox.    Opinion June 7, 1904.

*Negligence. Master and Servant.* Duty of master to furnish safe appliances. When this duty may not be delegated. *Fellow-Servant.*

The plaintiff was injured by the fall of a platform upon which he was at work for the defendants. The defendants knew that certain materials were required with which to secure the platform in place. They themselves had no materials, furnished none, and attempted to furnish none, but expected and intended that the fellow-servants of the plaintiff would use the identical fore throat-halyards of a certain vessel which they did use for that purpose. An examination of the halyards would have revealed the fact that they were old and rotten, unsafe and unsuitable, but no examination was made.

*Held;* that if the workmen in furnishing these halyards for the use to which they were put acted by the authority of the defendants, they stood in place of the defendants in discharging a duty owed by them to their servants.

*Also;* this duty, to furnish their servants with safe and suitable materials and appliances with which to perform their work, could not be delegated so as to relieve the defendants from responsibility for negligence in its peform-

ance to the plaintiff, who had nothing to do with securing the platform and first came to work upon it after it was in place.

In such case, while the men who secured the platform were the fellow-servants of the plaintiff in the use which they made of the halyards after they were furnished, they did not sustain that relation to him in furnishing the halyards.

Exceptions by plaintiff. Sustained.

Action by plaintiff for personal injuries suffered by him, in the defendant's employ at the defendant's plant in Rockport, Knox County, May 28, 1902, by the giving way of rope supporting one corner of a coal stage, and his falling into the hold of the vessel then being unloaded.

The case was opened to a jury, and upon the evidence being taken out, on motion of the defendants, the presiding justice instructed the jury to render a verdict for the defendants. The plaintiff took exceptions to this instruction of the court, contending that the case should have been submitted to the jury.

The case appears in the opinion.

Declaration. In a plea of the case, for that heretofore, to wit:—on the 28th day of May, 1902, at said Rockport, to wit:—at said Rockland, the said defendants were, and for a long time prior thereto had been, and still are engaged in the business of burning lime from lime-rock, and carrying on other business connected therewith.

That in the prosecution and conduct of said business and burning said lime, the said defendants use and have a large amount of coal, which said coal is brought to the premises operated and controlled by said defendants and upon which said business is conducted by means of vessels, and is unloaded from said vessels onto the wharf on said premises, and the said defendants in order to so unload said coal, had on or before said day erected and had under their control, maintenance and management upon said wharf, and projecting over the vessel from which coal was then and there being unloaded by said defendants, a run or stage, elevated at a great height above the deck of said vessel, to wit:—at a height of 20 feet.

That the plaintiff was upon said day employed by said defendants for hire, to work upon said stage and assist in unloading said coal from said vessel; in which said work it was the duty of the plaintiff

to wheel a barrow to the end of said stage projecting over the hatch of said vessel there to assist in dumping coal into said barrow when it should be hoisted from said vessel, and to wheel the same and dump it upon said wharf occupied by said defendants.

And the plaintiff avers that it was then and there the duty of said defendants for the protection and safety of their servants at work thereon to exercise reasonable care in the construction and erection of said stage and the supports thereof, and in selecting the material therefor, and to exercise like care to have, keep and maintain the same in a safe and suitable condition for unloading said coal.

That said defendants had constructed said stage and sent the plaintiff to work thereon, and in constructing the same had supported the outer or projecting end of said stage by the halyards of said vessel, which said halyards were defective, decayed, unsafe and unsuitable for said purpose; all of which was well known to the said defendants, or by the exercise of reasonable care might have been known to them.

And the plaintiff avers that upon said day, while he was in the exercise of reasonable care and in performing his duties aforesaid was standing upon the outer edge of said projecting stage, without any knowledge or means of knowledge, of the defective, decayed, unsuitable and unsafe condition of the ropes by which said stage was supported, the rope, or halyard which supported one of the outer corners of said stage suddenly broke because of its insufficiency for the purpose for which the defendants had made use of it, and the plaintiff was thereby projected and thrown into the hold of the vessel, falling a long distance, to wit:—a distance of thirty feet, and striking in the bottom of the hold of said vessel, and upon the beams therein, whereby he was greatly bruised, injured and shaken up, and his back and side were greatly strained and his spine injured, and he suffered and will continue to suffer great pain, both of body and mind; has expended and will be obliged hereafter to expend large sums of money in medical attendance and nursing; since said injury has been and will continue to be wholly disabled from performing bodily labor and earning a livelihood for himself and his family; and is permanently disabled by the injuries so by him suffered by the

fault of said defendants, and which were not contributed to in any degree by fault on his part.

*C. E. and A. S. Littlefield,* for plaintiff.

Counsel argued: (1) That whether the master undertook to furnish a completed structure, and therefore in putting up the stage the employees were doing the duty of the master in the case at bar, is a question of fact to be passed upon by the jury. (2) The master delegated to the servant not simply the duty of selecting from material furnished by him, but his duty to furnish material, and is therefore responsible for the material negligently furnished, and (3) If we assume that the master furnished all the materials on board of the the vessel for supporting the stage, there is still evidence that the material furnished was unsuitable for the purpose and the master is therefore liable as not having furnished suitable material. Incidentally, we say that the plaintiff being sent to work on the stage after it was a completed structure is entitled to recover against the defendant, because as to him at least the defendants furnished the stage as a completed structure and are responsible for the sufficiency of it.

*D. N. Mortland,* for defendants.

The plaintiff was a fellow-workman with all others of that crew of men. The rule is stated in *Kelley* v. *Norcross,* 121 Mass. 508, and cited in case of *Donnelly* v. *Booth Bros. & Hurricane Isle Granite Co.,* 90 Maine, 110, that when the master does not undertake the duty of furnishing or adapting the appliances by which the work is to be performed, but this duty is intrusted to or assumed by the workmen themselves, within the scope of their employment, he is exempt from responsibility if suitable materials are furnished and suitable workmen are employed.

Whatever machinery or appliances used, were selected by plaintiff's co-workmen or employees, under no orders or directions from the masters or their agent directly or indirectly. Whatever these co-workmen selected and used, belonging to the defendants, was good and suitable for the purpose. The fall or halyards that broke or parted, which was the cause of the accident, was not furnished or used by this crew by any order or direction of the defendants or their agent, but was selected and used without any instructions what-

ever by plaintiff's co-laborers or workmen,. who were competent to determine what materials were or were not suitable.

The evidence shows that Mr. Arey, the agent of Bryant & Kent, intrusted the work of discharging the cargo to his employees or workmen, leaving it to them, they being competent and experienced men, to provide the structure and appliances required for its prosecution. If this be so, we contend he was responsible only for care in the selection of the men to do such work and for the safety of materials furnished to them by him. As stated in the opinion in case of *Arkerson* v. *Dennison*, 117 Mass. 412, "If the employer directs his workmen to do certain work, leaving it to them to provide the structures and appliances required for its prosecution, he may be responsible only for care in the selection of the men and materials assigned for it." In *Adasken* v. *Gilbert*, 165 Mass. 443, the court say in the opinion, "As there was no evidence that the defendant undertook to furnish the staging as a completed structure, but intrusted the making of it to the intestate and his fellow-servants, the defendant is not liable, if there was no defect in the rope." In *Colton* v. *Richards*, 123 Mass. 484, the court held that if the defendant employed competent men to take charge of the erection of that building and of the necessary staging out of which material a fellow-workman, not under the superintendence of the defendant or his agent, selected a defective put-log which broke after the staging was erected by which the plaintiff was injured, that the defendant was not liable if he used ordinary care and prudence in the selection of competent workmen and materials from which the staging was made. In the case at bar, the defendant did not in fact by any order or direction furnish any structure or any portion of it, but permitted the use of whatever the workmen selected and saw fit to use, they being competent men to do that work and to select suitable materials for such purpose. "It is a familiar rule (as the Massachusetts court says) that one who enters the service of another takes upon himself the risks incident to the employment, including the risk of the negligence of fellow-servants employed in the same service." *Killea* v. *Faxon*, 125 Mass. 486. These men so employed to erect the staging and select the apparatus

for the purpose, were all fellow-servants with the plaintiff, as held in *Rounds* v. *Carter*, 94 Maine, 535; *Kennedy* v. *Spring*, 160 Mass. 203; *Hoppin* v. *Worcester*, 140 Mass. 222; *Nelson* v. *Du Bois*, 11 Daly, (N. Y.) 127. There is no evidence in this case that the defendants undertook, directly or indirectly, to furnish the staging or materials as a completed structure. The breaking or parting of the halyards of the vessel caused the accident. These halyards were selected and used for the purpose by the plaintiff's co-laborers, men too, competent and experienced in the construction of stagings of that kind and in knowledge as to the strain to which the rigging was or would be subjected. Instead of asking for other or more suitable rope or rigging, they voluntarily used the halyard of the vessel without orders or directions to do so. There is nothing in plaintiff's declaration or in the evidence that shows incompetency on the part of the co-workmen so employed. As remarked by this court in the opinion in case of *Pellerin* v. *International Paper Co.*, 96 Maine, 391: "There is no evidence that the defendant undertook to furnish the staging in question for the workmen as a completed structure. The company did not assume the responsibility of adapting specific hooks or planks to the construction of a particular staging. On the contrary, it satisfactorily appears that, that duty was intrusted to the workmen engaged in painting the ceiling, and assumed by them as within the scope of their employment. The plaintiff's fellow-workmen obtained the hooks and the planks from the company's storehouse and erected the staging themselves. There is no suggestion that they were not competent workmen. Under such circumstances, if the plaintiff's fellow-workmen failed to exercise due care in the adjustment of the planks to the hooks, and the accident resulted from that cause, the defendant company is not responsible," and cites case of *Kelley* v. *Norcross*, supra, approvingly and like authorities on the same point. The mere fact, that the plaintiff may have sustained an injury while in the employment of the defendants or upon their premises, raises no presumption of wrong on their part and is not of itself sufficient upon which to found a verdict. *Nason* v. *West*, 78 Maine, 255.

SITTING: EMERY, STROUT, SAVAGE, POWERS, PEABODY, JJ.

POWERS, J. Exceptions to the ruling of the presiding justice directing a verdict for the defendant.

There was evidence tending to show the following facts:—

The defendants operated a quarry at Rockport. They were unloading coal from the schooner "Perry" lying at the wharf. The mode of unloading coal was over a platform belonging to the defendants, consisting of a movable stage and a permanent run, one end resting upon the wharf and the other was attached to and supported by the vessel's throat-halyards. This end extended over the hatch between the foremast and mainmast, and was elevated above the deck. The coal was hoisted from the hold, dumped into the wheelbarrows on the end of the stage and wheeled thence over the stage and run to a pile upon the wharf. The plaintiff was in the employ of the defendants as a common laborer, doing such kind of work as he was directed to do. On May 28, 1902, he was injured by the fall of this stage on which he was engaged in the wheeling of the coal from the schooner. The fall was caused by the breaking of the fore throat-halyards which supported the right-hand corner of the front end of the platform above the hatch. The platform and the load upon it weighed from one to two tons. It had been put in position in the morning at the beginning of the work of unloading the coal and fell about two o'clock of the same day. While in position, a considerable amount of coal had passed over the platform. George E. Arey had charge of the defendants' business at Rockport, and hired and discharged the men. The platform was put up on this occasion by his direction. The night before he telephoned to one Bracey to get shovelers, come over in the morning, put up the gear and discharge the vessel. The platform was put up by two of the men whom Bracey brought with him to work for the defendants in discharging the schooner. These men used the halyards for supporting the stage. The defendants furnished no other materials for that purpose, and Mr. Arey expected the men to use the vessel's halyards for holding up the stage, and the defendants had no materials for that purpose. The plaintiff had nothing to do with putting up the stage. His general

employment was jobbing, and when he worked wheeling he was paid extra compensation. He had been employed the day before in discharging another cargo of coal, the only prior instance of his doing that work for the defendants. When he got through, nothing was said to him about working on any other coal vessel, and he went to work that afternoon planking over the run and was engaged in doing that work the following morning while the platform was suspended by the other workmen. The first orders he had to have anything to do with discharging the "Perry," was after the run was repaired and the other workmen had started in to discharge the coal, after the platform was erected and in place. He had no knowledge of the condition of the ropes which supported the platform. There is no claim that any want of care on the part of the plaintiff contributed to the accident. The superintendent, Mr. Arey, was present for a longer or a shorter time at the wharf during the placing in position of the platform, but at no time gave any direction in regard to it other than what was contained in his telephone message to Bracey. An examination of the halyards would have shown that they were old and rotten. No examination of them for the purpose of ascertaining if they were suitable was made by any one. Arey did not put anybody in charge of putting up the stage, but the gang were to put up what was necessary without any further instructions from him.

The adjusting and securing the platform in place was incidental to and a part of its contemplated use, one of the ordinary duties of the workmen and a part of the work which they were engaged to do. In doing this, they acted as fellow-servants of the plaintiff and the defendants would not be liable for their negligence in the manner of doing it. They simply adapted the platform to use by means incidental to its use, work which may properly be intrusted to servants. It matters not that the stage was already secured in position before the plaintiff was set to work discharging the coal. "An employer under such circumstances owes one who is about to enter his service no duty to inspect all the work which has been done by his servants previously, and which may ordinarily be intrusted to them without liability to his fellow-servants." *O'Connor* v. *Rich,* 164 Mass. 560, 49 Am. St. Rep. 483; *Butler* v. *Townsend,* 126 N. Y. 105.

It is familiar law, however, that the risks arising from the negligence of fellow-servants, which a servant assumes in entering the employment of a master, are those only which occur after the due performance by the master of those duties which the law imposes upon him. One of these duties is the furnishing of safe and suitable materials and appliances with which to do the work in which the servant is employed. He is chargeable with the knowledge of the means necessary to be employed and is liable for negligence in providing them. If this undertaking is to provide a completed appliance, he must use ordinary care to furnish one that is safe and suitable; if its construction is such as may be properly left to the workmen, then he is bound to employ competent workmen and furnish suitable materials. He is not liable for the negligence of a fellow-servant in the selection of unsuitable materials from proper materials furnished, but he is liable for his own negligence in furnishing unsuitable materials. *Kelley* v. *Norcross,* 121 Mass. 508; *Donnelly* v. *Booth Bros. & Hurricane Isle Granite Co.,* 90 Maine, 110.

It cannot be doubted that in the case at bar, it was the duty of the defendants to furnish safe and suitable materials with which the workmen might secure and support the end of the platform. They knew that such materials were required, yet they had none for that purpose. Mr. Arey, their superintendent, testified that he expected the workmen to use the vessel's fore throat-halyards to secure the platform. Knowing that something must be used for that purpose, knowing that nothing was furnished and making no attempt to furnish anything to meet that requirement, and expecting as he did, that the workmen would use the fore throat-halyards, he must have intended that they should use them. This is not a case where the workmen selected the materials to be used from proper materials furnished by the master. Selection implies a choice, and here the workmen had no materials of the master from which to choose. Neither is it a case in which workmen being without materials for their work, instead of applying to the master, volunteer to supply themselves without his knowledge or consent. Here the workmen used the identical materials which the master expected and intended they should use. A jury would have been authorized to find that in

furnishing the halyards for the use to which they were put, the workmen acted by the authority of the defendants. If so, they stood in the place of the defendants in discharging a duty owed by them to their servants, which could not be delegated so as to relieve them from responsibility for negligence in its performance to the plaintiff, who had nothing to do with securing the platform and first came to work upon it after it was in place. In such case while the men who secured the platform were the fellow-servants of the plaintiff in the use which they made of the halyards after they were furnished, they did not sustain that relation to him in furnishing the halyards for that purpose. In doing that, if they acted by the authority of the defendants, discharging their duty to furnish safe and suitable materials, and if there was negligence in this respect, the defendants must answer for it. We think the case should have been submitted to the jury.

*Exceptions sustained.*